UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TERESA M.,

                Plaintiff,

             -v-                        1:21-CV-1308

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                OF COUNSEL:

TERESA M.
Plaintiff, Pro Se
27 Maple Street, Apt. 3
Hudson Falls, NY 12839

SOCIAL SECURITY          NATASHA OELTJEN, ESQ.
   ADMINISTRATION       TIMOTHY SEAN BOLEN, ESQ.
Attorneys for Defendant     Special Ass't U.S. Attorneys
6401 Security Boulevard
Baltimore, MD 21235

DAVID N. HURD
United States District Judge

**MEMORANDUM–DECISION & ORDER**

## I. INTRODUCTION

On December 7, 2021, *pro se* plaintiff Teresa M.[1] ("plaintiff" or "claimant") filed this civil action seeking review of the final decision of defendant Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act").

On March 9, 2022, the Commissioner filed a certified copy of the Administrative Record.  Dkt. No. 11.  Under General Order 18, defendant's filing of the official transcript triggered a forty-five-day time period in which plaintiff was obligated to submit a brief in support of her appeal.  *See id.*

Plaintiff failed to do so.  In light of her status as a *pro se* litigant, U.S. Magistrate Judge Miroslav Lovric *sua sponte* extended the deadline.  Dkt. No. 13.  When plaintiff failed to file a brief before the new deadline, Judge Lovric *sua sponte* extended the deadline again.  Dkt. No. 14.  Plaintiff failed to file a brief that time, too.

On July 11, 2022, as part of his continuing effort to get plaintiff's appeal briefed, Judge Lovric directed the Commissioner to file her own brief within

---

[1]  In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be mentioned in this opinion.

forty-five days.  Dkt. No. 15.  At that time, Judge Lovric explained to plaintiff that she would have thirty-five days "after service of Defendant's brief within which to serve and file a brief in support of [her] position."  *Id*.  Judge Lovric cautioned plaintiff that if she did not file a brief, "the Court will have only Defendant's arguments before it in considering [her] . . . appeal."  *Id*.

On August 24, 2022, the Commissioner filed her brief in support of affirmance.  Dkt. No. 19.  That day, Judge Lovric entered an order reminding plaintiff that she had thirty-five more days in which to file a brief in support of her own position.  *Id*.  Judge Lovric again cautioned plaintiff that, if she did not file a brief, "the Court will have only Defendant's arguments before it in considering [her] . . . appeal."  *Id*.  Plaintiff failed to do so.  To date, plaintiff still has not filed a brief in her support of her position.

On October 18, 2022, the referral of this matter to Judge Lovric was terminated.  The appeal will be considered on the basis of the available submissions without oral argument.

## II. <u>BACKGROUND</u>

On December 30, 2019, plaintiff applied for DIB and SSI alleging that her anxiety, depression, chronic kidney disease, diabetes, high blood pressure, anemia, and high cholesterol rendered her disabled beginning on February

28, 2019.  R. at 309.[2]  This claim was initially denied on March 25, 2020, *id.* at 153–57, and again after reconsideration on July 24, 2020, *id.* at 160–67.

On December 17, 2020, at plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") Asad M. Ba-Yunus.  R. at 48–58.  The ALJ conducted the hearing from Albany, New York.  *Id.*  Plaintiff, appearing *pro se*, appeared telephonically.  *Id.*  As relevant here, plaintiff explained to ALJ Ba-Yunus that she was in the process of hiring an attorney.  *Id.*  Thereafter, ALJ Ba-Yunus postponed the hearing so that plaintiff's counsel could get up to speed on the case.  *Id.*

On March 11, 2021, ALJ Ba-Yunus reconvened the hearing on plaintiff's benefits claim.  R. at 59–94.  As before, ALJ Ba-Yunus conducted the hearing from Albany, New York.  *Id.*  Plaintiff, represented by attorney Mary Withington, appeared and testified telephonically.  *Id.*  The ALJ also heard testimony from Vocational Expert Jeffrey Joy.  *Id.*

On March 30, 2021 ALJ Ba-Yunus issued a written decision denying plaintiff's application for benefits.  R. at 28–42.  This decision became the final decision of the Commissioner on October 6, 2021, when the Appeals Council denied plaintiff's request for review.  *Id.* at 1–3.

---

[2]  Citations to "R." refer to the Administrative Record.  Dkt. No. 11.

### III.  <u>LEGAL STANDARD</u>

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

To qualify as disabled within the meaning of this definition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The ALJ follows a five-step sequential evaluation process to decide whether a claimant is disabled.  20 C.F.R. § 404.1520.[3]  At step one, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity."  § 404.1520(a)(4)(i).  If so, the claimant is not disabled regardless of his medical condition or other factors.  § 404.1520(b).

---

[3] Section 404.1520 sets forth the five-step evaluation used for DIB claims.  A parallel set of regulations govern SSI applications.  *See* 20 C.F.R. § 416.920(a)(4).

If the claimant is not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a "severe" impairment or combination of impairments; *i.e.*, a medically determinable condition that "significantly limits" his physical or mental ability to do basic work activities.  § 404.1520(c).

If the claimant suffers from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether the impairment(s) meet or equal an impairment specifically listed in Appendix 1 of the Regulations (the "Listings").  § 404.1520(d).  If the claimant's severe impairment(s) meet or equal one or more of the Listings, then the claimant is presumed to be disabled regardless of any other factors.  § 404.1520(a)(4)(iii).

If the claimant is not presumed disabled under one or more of the Listings, then step four requires the ALJ to assess whether—despite the claimant's severe impairment(s)—he has the residual functional capacity ("RFC") to perform his "past relevant work."  § 404.1520(e)–(f).  If so, the claimant is not disabled.  § 404.1520(a)(4)(iv).

Finally, if the claimant cannot perform his past relevant work, the Commissioner must determine if the claimant's RFC, in combination with his age, education, and work experience, permits the claimant to do any other work in the national economy.  § 404.1520(a)(4)(v), (f)–(g).

The burden of proof for the first four steps is on the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).  However, if the claimant shows he cannot perform his past relevant work at step four, the burden shifts to the Commissioner for step five.  *Id.*

The Act further provides for judicial review of "any final decision . . . made after a hearing" by the Social Security Administration ("SSA" or the "Agency").  42 U.S.C. § 405(g).  However, the scope of this review is limited to determining whether (1) the Commissioner applied the correct legal standard to his analysis and, if so, (2) whether the final decision is supported by "substantial evidence."  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (cleaned up).

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (cleaned up).  "If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists."  *Morales v. Berryhill*, 484 F. Supp. 3d 130, 140 (S.D.N.Y. 2020) (citation omitted).

However, this "deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law."  *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Thus, "where there is a reasonable basis for

doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed.  *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  This is so regardless of whether or not the decision is otherwise supported by "substantial evidence."  *See id*.

## IV.  <u>DISCUSSION</u>

The ALJ applied the five-step analysis to find that: (1) plaintiff had not engaged in substantial gainful activity since February 28, 2019, the alleged onset date; (2) plaintiff's morbid obesity, lumbar degenerative disc disease, diabetes mellitus type II with associated gastroparesis and diarrhea, hypertension, hyperlipidemia, gastroesophageal reflux disorder; heart disease, chronic kidney disease stage IV with nephropathy and proteinuria, and peripheral vascular disease with blue toe syndrome and stenting were all "severe" impairments within the meaning of the Regulations; and (3) these impairments, whether considered individually or in combination, did not meet or equal any of the Listings.  R. at 30–35

At step four, the ALJ determined that plaintiff retained the RFC perform "sedentary" with exertional (*i.e.*, physical) limitations.  R. at 36.  Specifically, the ALJ found that plaintiff:

> can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds; and can occasionally have exposure to hazards including unprotected heights and dangerous machinery.

R. at 36.  Next, the ALJ determined that plaintiff had past relevant work as a hospital products assembler, a sales clerk, and a cashier checker, but that she was unable to perform any of this past work with her RFC.  R. at 41.

However, after considering plaintiff's age, education, and the RFC finding in light of the testimony from the Vocational Expert, the ALJ concluded that plaintiff could still perform a range of unskilled sedentary work in such representative jobs as a "charge account clerk," a "call out operator," and an "addresser."  R. at 42.

Because these representative jobs existed in the sufficient numbers in the national economy, the ALJ concluded that plaintiff was not disabled between February 28, 2019, the alleged onset date, through March 30, 2021, the date of his written decision.  R. at 42.  Accordingly, the ALJ denied plaintiff's application for benefits.  *Id*.

## A.  <u>Plaintiff's Appeal</u>

As noted *supra*, plaintiff has not filed a brief in this appeal.  This leaves the Court to guess about the nature of plaintiff's objection to the ALJ's findings and conclusions.  A review of plaintiff's one-page complaint does not shed any light on this question.  And there are no other filings from plaintiff on the docket that might aid in this review.

In the absence of any input from plaintiff, the Court has independently reviewed the transcript of the second hearing, R. at 59–94, the ALJ's written decision, *id*. at 28–42, and the Commissioner's brief, Dkt. No. 19.  This review confirms that the ALJ applied the correct legal standards and supported his conclusion with substantial evidence in the record.

For instance, the ALJ acted within his discretion to conclude at step two that plaintiff's mental impairments were not "severe" within the meaning of the Regulations.  R. at 31–34.  This early step of the process sets a low bar that is intended only to screen out disability claims based on *de minimis* impairments.  *See, e.g.*, *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. Kahn, J.) (adopting Report & Recommendation of Bianchini, M.J.).  Even so, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment," is insufficient to render a condition "severe" within the meaning of the Regulations.  *Id*.

Instead, the burden at this step falls on the claimant to identify how the particular symptomatology stemming from the impairment claimed to be "severe" actually works to "significantly limit" his physical or mental ability to complete "basic work activities."  *Lake v. Colvin*, 2016 WL 2757750, at *4 (N.D.N.Y. May 12, 2016).  For instance, if the evidence indicates that a condition exists but is well-controlled by medication or treatment and does

not cause the claimant any functional issues, that condition is not "severe" within the meaning of the Regulations. *See id*. at \*5 (collecting cases).

As the Commissioner points out, the ALJ engaged in a thorough review of the medical record, including considering the reports of two state agency psychological experts who opined that plaintiff's mental impairments were non-severe. Def.'s Mem. at 6–9.[4] Even assuming otherwise (and there is no indication in the record we should), any error would be harmless.

"Courts have held that error at step two in determining the severity of impairments is harmless if the ALJ finds at least one other severe impairment and continues through the sequence of the disability analysis because the non-severe impairments can later be considered at the RFC stage." *Howard v. Comm'r of Soc. Sec.*, 203 F. supp. 3d 282, 297 (W.D.N.Y. 2016) (collecting cases).

The ALJ continued beyond step two and engaged at length with this and other aspects of plaintiff's voluminous medical record. As the Commissioner again correctly notes, the ALJ's analysis—both at and after step two—was somewhat complicated by the fact that there is a "consistent pattern of longitudinal noncompliance with recommended care." Def.'s Mem. at 15. Even so, the record shows that the ALJ conducted a thorough review of

---

[4] Pagination corresponds to CM/ECF.

plaintiff's file and reached a reasonable conclusion based on the application of the correct legal standards.  R. at 35–42.

## IV. <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1.  The Commissioner's motion for a judgment on the pleadings is GRANTED;

2.  The Commissioner's decision is AFFIRMED; and

3.  Plaintiff's complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the file.

IT IS SO ORDERED.

Dated:  October 21, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge